# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1985

_____

Walter Barton

*Petitioner - Appellee*

v.

Warden William Stange

*Respondent - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: May 15, 2020
Filed: May 17, 2020

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

PER CURIAM.

After two mistrials, a trial and conviction that was reversed and remanded by the Missouri Supreme Court, and a second trial and conviction that was later vacated, Walter Barton was convicted after his fifth trial for murder in the first degree. *State v. Barton*, 240 S.W.3d 693, 696 (Mo. 2007). His conviction was affirmed by the Missouri Supreme Court, *id*. at 711, and became final in 2008, *see Barton v. Missouri*, 555 U.S. 842 (2008) (mem.).

Barton subsequently filed a motion for state post-conviction relief, and the Missouri Supreme Court affirmed the denial of his motion. *Barton v. State*, 432 S.W.3d 741, 764 (Mo. 2014). Barton filed another motion for relief based on the performance of his post-conviction counsel. *Barton v. State*, 486 S.W.3d 332, 335 (Mo. 2016). The Missouri Supreme Court again affirmed the denial of relief. *Id.* at 339. Barton then turned to federal court seeking *habeas* relief, the denial of which became final last year. *See Barton v. Stange*, 589 U.S. ---, 140 S. Ct. 525 (2019) (mem.).

In February 2020, Barton's execution was set for May 19, 2020. Barton again pursued state post-conviction relief, seeking a writ of *habeas corpus* from the Missouri Supreme Court based on a claim that he is not competent for execution and an actual innocence claim. *State ex rel. Barton v. Stange*, No. SC98343, slip op. at 1-2 (Mo. Apr. 27, 2020). The Missouri Supreme Court determined that Barton was competent based on the standards outlined by the United States Supreme Court. *See Madison v. Alabama*, 586 U.S. ---, 139 S. Ct. 718, 722 (2019). It also determined that Barton's evidence of his innocence did "not show actual innocence by a preponderance of the evidence as required for a gateway claim of actual innocence, nor [did] it rise to the level of clear and convincing evidence required for a freestanding claim of actual innocence." *Barton*, slip op. at 1-2.

Following the Missouri Supreme Court's decision, Barton filed another petition for *habeas* relief in the United States District Court for the Western District of Missouri under 28 U.S.C. § 2254 on May 4, 2020. He concurrently filed a motion for stay of execution. The district court received all of the relevant briefing for the *habeas* petition and the motion for stay of execution on May 11, 2020. On May 15, the district court entered an order granting the motion for stay of execution.

The State appeals, urging us to vacate the district court's stay of execution. "We generally review a district court's decision to stay execution for an abuse of discretion." *Nooner v. Norris*, 491 F.3d 804, 807 (8th Cir. 2007).

Appellate Case: 20-1985    Page: 2    Date Filed: 05/17/2020 Entry ID: 4914015

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Lee v. Hutchinson*, 854 F.3d 978, 980-81 (8th Cir. 2017) (per curiam). "To prevail, inmates must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* at 981 (internal quotation marks omitted).

Here, the district court entered a stay pursuant to 28 U.S.C. § 2251(a)(1) on the basis that it "require[d] more time to consider the merits of the claims." The district court relied on the Supreme Court's ruling in *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996), where the Supreme Court explained that a district court should issue a stay if it cannot dismiss a *habeas* petition on the merits before the scheduled execution, as well as *Dobbert v. Strickland*, 670 F.2d 938, 940 (11th Cir. 1982) (per curiam), in which the Eleventh Circuit stayed an execution "to consider properly the merits of the issues raised."

We question the applicability of the authorities the district court relied on to enter a stay solely on the basis of time constraints that purportedly prevented even a preliminary consideration of the merits of the two issues Barton has raised to determine whether he has a significant likelihood of succeeding on either of them. *See Lonchar*, 517 U.S. at 316-17 (noting that the *habeas* petition was filed on the day of the scheduled execution); *Dobbert*, 670 F.2d at 939-40 (staying an execution where the *habeas* petition raised thirteen separate issues, one of which had "never been decided by any federal appellate court" before, and the panel had not received the "appeal papers" until roughly twenty-four hours before the scheduled execution).

This procedural point, however, need not be resolved now. Because the district court found itself without time to consider the merits at all, we have carefully reviewed them ourselves to determine if a stay is warranted. *See, e.g.*, *Alabama v. Evans*, 461 U.S. 230, 231, 233-34 (1983) (per curiam) (concluding a petition for *habeas* was "without merit" and vacating a stay of execution that the district court entered because it concluded "'the time available does not permit this Court to make

Appellate Case: 20-1985     Page: 3     Date Filed: 05/17/2020 Entry ID: 4914015

a meaningful review or study'"). We find the merits "readily apparent" and therefore vacate the stay and remand the case with instructions to dismiss the petition. *See Hauser ex rel. Crawford v. Moore* 223 F.3d 1316, 1323 (11th Cir. 2000) (per curiam).

When, as here, an application for a writ of *habeas* corpus has been adjudicated on the merits in state court, we may grant a writ only where the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

"Under § 2254(d)(1)'s unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Cole v. Roper*, 783 F.3d 707, 710 (8th Cir. 2015) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). Instead, the application must also be unreasonable. *Id.* Stated another way, a state court's decision may be incorrect yet not unreasonable, and we grant relief only if it is both. *Id.*

Barton first argues that the Missouri Supreme Court's decision as to his incompetence claim "relies upon interpretations of the law which are contrary to United States Supreme Court precedent upon the matter and an unreasonable determination of the facts presented." The Eighth Amendment "prohibits the execution of a prisoner whose mental illness prevents him from rationally understanding why the State seeks to impose that punishment." *Madison*, 139 S. Ct. at 722 (internal quotation marks and brackets omitted) (citing *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007)). "The mental state requisite for competence

-4-

to suffer capital punishment neither presumes nor requires a person who would be considered 'normal,' or even 'rational,' in a layperson's understanding of those terms." *Panetti*, 551 U.S. at 959.

Noting these standards, the Missouri Supreme Court observed that Barton's own expert concluded in her report that Barton "demonstrated a rudimentary factual understanding of the punishment he is about to receive and the reasons for it." It also noted her conclusion that Barton "demonstrated a simplistic, but rational understanding of the punishment he is about to receive and the reasons for it." Finally, it noted her conclusion that Barton "did not demonstrate any delusional thinking or loss of contact with reality and no perceptual disturbances were noted."

Based on Barton's own expert's report, we cannot say that the Missouri Supreme Court unreasonably applied the standards the United States Supreme Court has established, nor can we say that the Missouri Supreme Court unreasonably determined the facts. The expert report demonstrates that Barton rationally understands why the State is imposing the death penalty. *See Madison*, 139 S. Ct. at 722. Barton's expert's conclusion that he was not competent under standards that are not controlling cannot change the clear dictates of the United States Supreme Court. Nor do the various district court and court of appeals decisions Barton cites show that the Missouri Supreme Court unreasonably applied clearly established federal law *as determined by the United States Supreme Court*. *See* § 2254(d)(1). Barton thus cannot demonstrate a likelihood of success on the merits on his competency claim.

Barton also asserts actual innocence as a gateway claim to raise "otherwise defaulted" claims of prosecutorial misconduct related to the testimony of Katherine Allen, a witness at Barton's fifth trial. He identifies four bases for his actual innocence claim: (1) the opinion of a blood spatter expert that would rebut the testimony of the State's blood spatter expert at Barton's fifth trial; (2) seventeen prior convictions Allen had at the time of the fifth trial that were not presented to the jury; (3) an agreement between the State and Allen to dismiss charges against her in

-5-

exchange for her testimony; and (4) Allen's 2016 federal conviction for identity theft and mail fraud.

"A habeas petitioner who raises a gateway claim of actual innocence must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001). "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." *Id.* "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine*, 238 F.3d at 1029). "Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Amrine*, 238 F.3d at 1029 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Barton cannot satisfy this two-part test.

First, Barton's evidence regarding Allen's seventeen prior convictions and her agreement with the State is not "new." This evidence was "available at trial," *Osborne*, 411 F.3d at 920, because, as he notes, his conviction after his fourth trial had been set aside on the basis of this very evidence. Thus, this evidence cannot support his claim of actual innocence. *See Amrine*, 238 F.3d at 1029 (noting the district court "did not err by deciding to focus" on only the "new evidence" presented in support of a gateway actual innocence claim).

Second, Barton's evidence regarding his blood spatter expert's opinion is also not "new." As Barton notes, his counsel for the fifth trial met and spoke with this expert before trial. At that time, his counsel showed him "a number of things from Barton's file" and, after receiving the expert's preliminary input, "decided . . . as a matter of strategy . . . not [to] call a blood spatter expert" for fear that this expert's opinion would "be inconsistent with Barton's story regarding how the blood got onto his clothing." *Barton*, 432 S.W.3d at 755. His full opinion, which Barton has since obtained, thus could "have been discovered earlier through the exercise of due

-6-

diligence." *See Osborne*, 411 F.3d at 920. This evidence, then, is not "new" and cannot support a claim of actual innocence. *See Amrine*, 238 F.3d at 1029.

Third, Barton's evidence regarding Allen's 2016 conviction likely is "new," but it is the sole piece of evidence in this regard and cannot support the conclusion "that it is more likely than not that no reasonable juror would have convicted [Barton] in light of" it. *See id.* At the fifth trial, Barton's counsel crossexamined Allen and established that she "had been convicted thirteen times for forgery, fraud, bad checks, and the like." *Barton*, 240 S.W.3d at 706. Also, "in closing argument, defense counsel drove home the point that . . . Allen's criminal acts were acts of dishonesty," explaining how Allen was "'a woman who her entire life . . . has lied'" and was a "'scheming, conniving sort of person.'" *Id.* We find it "highly unlikely" that this "additional piece[] of impeachment information . . . aimed at a witness whose character was already tarred" would have been sufficient to change the result, *see United States v. Rosner*, 516 F.2d 269, 278 (2d Cir. 1975), so it is not "more likely than not that no reasonable juror would have convicted" Barton had it heard about this one additional conviction, *see Amrine*, 238 F.3d at 1029.

For the foregoing reasons, we vacate the stay of execution and remand with instructions to dismiss Barton's petition because we see no possibility of success on the merits on either of Barton's claims. *Cf. Middleton v. Roper*, 759 F.3d 867, 868 (8th Cir. 2014) (per curiam) (concluding the district court abused its discretion in granting a stay of execution because the petitioner had "not shown a substantial likelihood of success on the merits of his federal habeas petition"); *Green v. Thaler*, 699 F.3d 404, 408 (5th Cir. 2012) (vacating a stay of execution and remanding with instructions to dismiss the *habeas* petition).

_____

Appellate Case: 20-1985     Page: 7     Date Filed: 05/17/2020 Entry ID: 4914015